910 So.2d 1113 (2005)
Roy Charles SCHANKIN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01459-COA.
Court of Appeals of Mississippi.
March 8, 2005.
Rehearing Denied June 7, 2005.
Certiorari Denied September 15, 2005.
*1115 Albert Lionel Necaise, Gulfport, attorney for appellant.
Office of the Attorney General, by Jeffrey A. Klingfuss, attorney for appellee.
Before LEE, P.J., IRVING and GRIFFIS, JJ.
IRVING, J., for the Court.
¶ 1. A Harrison County jury convicted Roy Charles Schankin of manslaughter. He was sentenced as a habitual offender to fifteen years in the custody of the Mississippi Department of Corrections. Aggrieved, Schankin now presents the following issues on appeal: (1) whether there was sufficient evidence to support a conviction, (2) whether it was error for the trial court to give certain jury instructions on manslaughter, (3) whether the court committed reversible error in giving certain jury instructions on aiding and abetting, (4) whether the court should have granted Schankin's proffered instruction regarding *1116 the right to carry a weapon, and (5) whether Schankin's sentence is grossly disproportionate to his crime. Finding no reversible error, we affirm Schankin's conviction and sentence.

FACTS
¶ 2. Roy Schankin was indicted by a Harrison County grand jury for the murder of Claude Cochran. Schankin's codefendant, William Leon Cobb, pleaded guilty to a reduced charge of manslaughter and received an eighteen-year sentence. At trial, the State presented the testimony of several witnesses, including that of Cobb and James Russell, an eyewitness to the crime.
¶ 3. Cobb testified that on the night before the incident, he and a friend were attacked by Cochran and another man while at a gas station. Cobb further testified that on the following day, he encountered Cochran and the man at a local establishment located on a beach along the Mississippi Gulf Coast. Cobb stated that he informed several people, including Schankin, of the attack that had occurred the previous night. Cobb testified that he decided to confront his attackers and asked Schankin for some "protection." Schankin gave Cobb a steel pipe and asked him if he needed help. Cobb testified that shortly thereafter, he heard a "loud smack," and Cochran had a dazed expression on his face. Cobb stated that after Schankin hit Cochran, he [Cobb] began hitting Cochran in the head and in the ribs with the steel pipe. Cobb then rolled the victim off of the edge of a pier into the ocean and left the scene.
¶ 4. Similarly, Russell testified that he overheard Cobb ask for a weapon, and Schankin offered Cobb a steel pipe. Russell further testified that he observed Schankin walk up to Cochran, turn him around, and hit him in the head with his fist. Russell stated that the victim looked stunned and was almost knocked unconscious.[1] Russell testified that Cobb then began stabbing and beating Cochran with the steel pipe and thereafter, kicked Cochran off the pier into the water. Russell stated that Cochran was lying face down in the water and could barely move. He stated that Schankin watched Cochran float approximately seven to ten minutes before jumping into the water, pulling Cochran out, and attempting to revive him.
¶ 5. An autopsy revealed that Cochran died as a result of drowning. The autopsy also revealed that Cochran's injuries likely caused him to become unconscious, rendering him unable to respond appropriately while immersed in the water. After the jury found Schankin guilty of manslaughter, he filed a motion for a new trial or, in the alternative, for a judgment notwithstanding the verdict. This motion was denied by the trial court. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Sufficiency of the Evidence
¶ 6. Schankin first argues that the evidence was insufficient to support a manslaughter conviction. He specifically claims that insufficient proof exists to support the required element of heat of passion necessary for a manslaughter conviction. Additionally, Schankin contends that the State failed to prove that he acted as an aider and abetter during the commission of the crime.
*1117 ¶ 7. When the sufficiency of the evidence is challenged, the evidence is viewed and tested in a light most favorable to the State. McClain v. State, 625 So.2d 774, 778 (Miss.1993) (citing Esparaza v. State, 595 So.2d 418, 426 (Miss.1992)). "We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." McClain, 625 So.2d at 778.
¶ 8. In the case sub judice, the jury received an instruction on both murder and manslaughter. Although the evidence equally supported a murder conviction, the jury, however, convicted Schankin of manslaughter. "Whether a defendant has committed murder or manslaughter is ordinarily a question to be resolved by the jury." Strahan v. State, 729 So.2d 800, 806(¶ 24) (Miss.1998) (citing Windham v. State, 520 So.2d 123, 127 (Miss.1987)). The determination of whether Schankin committed the crime while acting in the heat of passion was properly submitted to the jury for resolution, and the jury made the determination against Schankin. Considering the evidence in the light most favorable to the State, we cannot say that the jury could not, on the evidence presented, find Schankin guilty of manslaughter. Schankin's argument to the contrary is without merit.
¶ 9. Similarly, Schankin's claim that the State failed to prove that he acted as an aider and abetter is also without merit. The law is clear that "`[a]ny person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an `aider and abetter' and is equally guilty with the principal offender.'" Hoops v. State, 681 So.2d 521, 533 (Miss. 1996) (quoting Sayles v. State, 552 So.2d 1383, 1389 (Miss.1989) (overruled on other grounds)). The State presented evidence that Schankin was present during the commission of the crime and actively assisted Cobb in the commission of the crime. As a result, Schankin's argument on this issue fails.

(2) Manslaughter Instruction
¶ 10. Schankin next contends that there was insufficient evidence of either murder or manslaughter to warrant a manslaughter instruction. Schankin also contends that the manslaughter instruction, which was given, was ambiguous and confusing to the jury.
¶ 11. Instruction S-2, which instructed the jury to consider manslaughter if it failed to find the defendant guilty of murder, reads:
If you fail to find the defendant, Roy Charles Schankin, guilty of the felony crime of murder then you should continue your deliberations to consider the elements of the felony crime of manslaughter.
If you find from the credible evidence in this case beyond a reasonable doubt that the deceased, Claude E. Cochran, was a living person, and that the defendant, Roy Charles Schankin, did aid and abet William Leon Cobb to kill Claude E. Cochran, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon not in necessary self-defense and without authority of law, then you shall find the defendant, ROY CHARLES SCHANKIN, guilty of manslaughter.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty of manslaughter.
Instruction S-3, which defines heat of passion, reads as follows:

*1118 The Court instructs the Jury that heat of passion is a state of violent an [sic] uncontrollable rage engendered by a blow or certain provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. [sic] The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment and terror.
¶ 12. Schankin directs this Court to State v. Shaw, 880 So.2d 296 (Miss.2004), as authority in support of his contention that the jury was not properly instructed.[2] In Shaw, the defendant was indicted for murder. Id. at 298. The trial judge would not allow the jury to consider the unindicted crime of manslaughter and granted a directed verdict of acquittal. Id. The State appealed, and on rehearing, our supreme court held that the jury should have been allowed to decide whether the defendant was guilty of the unindicted offense of manslaughter, which was a lesser-included offense of murder. Id. at 304-05.
¶ 13. A thorough review of the record reveals that the jury was properly instructed on both manslaughter and murder in accordance with Shaw. Although the jury convicted Schankin of manslaughter, the record is clear that there was also sufficient evidence to support a conviction of murder. We have recognized in a number of cases that, where the record contains legally sufficient evidence to support a conviction of murder, the defendant will not be heard to complain that a manslaughter instruction was given, even if the instruction was not warranted under the evidence. Jackson v. State, 551 So.2d 132, 146 (Miss.1989) (citing Crawford v. State, 515 So.2d 936, 938 (Miss.1987); Cook v. State, 467 So.2d 203, 209 (Miss.1985)).
¶ 14. Further, Schankin's argument that the manslaughter instruction was confusing is without merit. The instruction set forth an accurate statement of law, and adequately instructed the jury regarding the elements required to convict Schankin of manslaughter.

(3) Aiding and Abetting Instruction
¶ 15. Schankin claims that the State's aiding and abetting instruction was incomplete and misleading. He contends that because the State's instruction contradicted the defense's instruction on aiding and abetting, it was confusing to the jury and did not properly inform the jury of the law.
¶ 16. The trial judge gave two instructions on aiding and abetting, D-1 and S-14. Schankin specifically claims that the State's instruction on aiding and abetting omits the required element of intent between an aider and abetter, as well as the requirement that each element of the crime be proven.
¶ 17. Instruction S-14 instructed the jury that "an `aider and abetter' is any person who is present at the commission of a criminal offense and aids, counsels, or encourages another or others in the commission of that offense, and is equally guilty with the principal offender." Instruction D-1 instructed the jury that it had to find beyond a reasonable doubt that "every element of the offense was committed by some person or persons, and that the defendant voluntarily participated in *1119 its commission with the intent to violate the law."
¶ 18. "`When considering a challenge to a jury instruction on appeal, we do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed.'" Milano v. State, 790 So.2d 179, 184(¶ 14) (Miss.2001) (quoting Burton ex rel. Bradford v. Barnett, 615 So.2d 580, 583 (Miss.1993)). "[I]f all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." Milano, 790 So.2d at 184(¶ 14). When read together, the instructions in this case set forth an adequate statement of the law on aiding and abetting. Therefore, this issue lacks merit.

(4) Right to Bear Arms Instruction
¶ 19. Schankin also contends that the trial court erred in refusing his proffered instruction instructing the jury on his right to carry a weapon. The trial judge, in denying the instruction, commented that he thought that it would be inappropriate to give the instruction because there was no evidence of a threat to Schankin that would have given him the right to arm himself.
¶ 20. Instruction D-2, which was refused by the trial judge, reads as follows:
You are instructed that under the law a man is justified in carrying a weapon if his life has been threatened or he has been threatened with great bodily harm and he has a good and sufficient reason to apprehend an attack from an enemy, and if you believe from the testimony in this case that the defendant's life had been threatened with great bodily harm, and therefore had reason to apprehend a serious attack, then the defendant was justified in carrying a pistol.
¶ 21. While Schankin, like all defendants, has a right to have the jury instructed as to his theory of the case, evidence must be adduced during the trial to support the instruction. Splain v. Hines, 609 So.2d 1234, 1239 (Miss.1992) (citing Alley v. Praschak Mach. Co., 366 So.2d 661, 665 (Miss.1979)). Here, there was no evidentiary basis warranting an instruction on Schankin's right to carry a weapon. There is nothing in the record to indicate that Schankin was fearful of Cochran, or that he perceived him as a threat. Evidence presented by the State revealed that Schankin volunteered his assistance by offering Cobb the steel pipe used to beat the victim, and it was Schankin who delivered the first blow to the victim, rendering him unable to defend himself. Therefore, this issue is without merit.

(5) Sentence
¶ 22. Schankin finally asserts that his sentence was grossly disproportionate to his role in the crime. Schankin contends that the trial court in sentencing him as a habitual offender placed inappropriate emphasis on prior felonies he committed more than fifteen years before the present crime.
¶ 23. "Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." Hoops v. State, 681 So.2d 521, 537 (Miss. 1996) (citing Reynolds v. State, 585 So.2d 753, 756 (Miss.1991)). "`Further, the general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute.'" Hoops, 681 So.2d at 538 (quoting Fleming v. State, 604 So.2d 280, 302 (Miss.1992)). "Proportionality review is required, however, in particular situations." Hoops, 681 So.2d at 538.
¶ 24. We fail to see how Schankin's sentence is grossly disproportionate to his crime. Here, Schankin was sentenced as a *1120 habitual offender under Mississippi Code Annotated section 99-19-81.[3] The trial judge, after considering factors such as evidence presented at trial and Schankin's prior criminal record, sentenced Schankin to fifteen years without the possibility of parole. Although the trial judge was statutorily required to sentence Schankin to a maximum of twenty years as a result of his habitual offender status, the judge deviated from the maximum statutorily mandated penalty and sentenced Schankin to fifteen years instead. As a result, these facts do not lend themselves to a finding that Schankin received a sentence grossly disproportionate to his crime. Though Schankin compares his sentence to that of Cobb's, we note that Cobb was not sentenced pursuant to a conviction at trial, but accepted a plea offered by the State. Further, there was no evidence in the record to suggest that Cobb was a habitual offender. Therefore, this issue lacks merit.
¶ 25. THE JUDGEMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF FIFTEEN YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Both witnesses testified that a third man, Donnie Stansbury, was also beating the victim and kicked him several times in the head and chest. There is no evidence in the record, however, to suggest that Stansbury also was charged in Cochran's death.
[2] At the time of the filing of Schankin's appeal, a motion for rehearing on Shaw was pending before the supreme court. The original opinion, which Schankin relied upon in his briefs to this Court, was recently withdrawn and superceded by the present opinion.
[3] Section 99-19-81 states that every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.