BARNES, J.,
for the Court:
¶ 1. A Holmes County jury convicted Rashaud Day of murder. He was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). Day now appeals, claiming the verdict was against the sufficiency and weight of the evidence. Finding no error, we affirm.
*1013 STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. During the afternoon of April 12, 2011, after smoking a marijuana “blunt” and “just chilling,” Cortney Coleman and his friend Hildrey Glover (a.k.a. “One-Eyed-Poo” or “Poo”) drove to Pickens, Mississippi, to get something to eat. While in Pickens, they decided to go to the house of Terry Brown (a.k.a. “Milk”). There, a few men were sitting under some trees. Cortney and Hildrey decided to get out of their vehicle and socialize. Both men were unarmed. Hildrey rolled another blunt, and Cortney walked over to a table and began playing dominoes with an individual known as “Fruit Loop.” Hildrey and Zera Harmon (Milk’s cousin) sat at the table and watched. Cortney, Hildrey, and Zera were all smoking a blunt. Zera was also drinking alcohol.
¶ 3. While Cortney played dominoes, Day ran up behind him and shot him in the back with a sawed-off 20-gauge shotgun. Day kept running and left the scene. Zera, Fruit Loop, and Hildrey all witnessed the shooting. Hildrey said he heard Day say, “I told [you] I was gonna get him,” as he shot Cortney. Day’s brother, Cortez, also witnessed the shooting. He said his brother’s demeanor was “the same” as usual while shooting Cort-ney. Cortney died soon after his arrival at the hospital. Later that day, Day turned himself in to law enforcement and gave a statement admitting he sneaked up behind Cortney and shot him. Cortney’s autopsy showed he died from a close-range shotgun wound to his back, which caused massive lacerations to Cortney’s heart and lungs.
¶4. None of the eyewitnesses to Cort-ney’s murder saw any confrontation between Cortney and Day on the day of the killing. Hildrey and Cortez testified that Cortney may not have seen Day on the premises. Zera, however, testified that after Cortney got out of his vehicle, he went and stood near Day and spoke to him, but she could not hear what was said. Zera and Cortez also testified that they had never seen Cortney at Milk’s residence before, but that Day went there quite often. Zera was also concerned about Cortney and Hildrey’s arrival at the social gathering because she had heard on the streets that Cortney and Day had “beef.”
¶5. During the three-day trial, there was evidence presented that Cortney had attempted to shoot Day on two prior occasions. Chief Joe Davis, who took Day’s statement after the murder, testified that Day told him the reason he shot Cortney was because Cortney had previously shot him in the head.[1] Medical records were entered into evidence that Day had indeed gone to the hospital for a gunshot wound to the back of the head on February 28, 2011. Dr. Frank Brown treated Day, who had come into the emergency room complaining of pain to the back of the head as a result of being shot. No bullet entered Day’s skull, and Dr. Brown determined Day’s injury was not life threatening. Dr. Brown’s medical notes stated that Day claimed the shooting occurred at a housing complex in Pickens, and law enforcement had been called to the scene. However, Day never implicated Cortney in the shooting until after he had killed Cortney.
¶ 6. Additionally, Callisha, Day’s sister, claimed that the month before the murder she overhead Cortney say he was “gunna kill” Day “and stuff like that.” She also knew about Cortney’s shooting Day because she had helped take Day to the hospital. One of Day’s cousins testified *1014 that he, Day, Cortez, and another individual were in Fruit Loop’s vehicle the evening of the first shooting. Cortney pulled up in a vehicle, and then backed off. Minutes later, they heard a gunshot that was fired toward their vehicle from behind.
¶ 7. Cortez also testified about another shooting incident possibly involving Cort-ney and Day prior to that date. Cortez claimed he was at the store with Day and Day’s son when Cortez saw a couple of guys, and then heard a gunshot; so he took Day’s little boy and ran. Cortez thought he saw Cortney during the incident. Cortez further testified that he was afraid Cortney and his friends were going to kill Day.
¶ 8. Day chose not to testify in his defense. Jury instructions were given on both murder and manslaughter. The jury found Day guilty of murder, and he was sentenced to life imprisonment. Day timely appealed.
ANALYSIS
¶ 9. Day argues that the jury verdict was against the sufficiency and weight of the evidence. For a challenge to the sufficiency of the evidence, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Nolan v. State, 61 So.3d 887, 893 (¶ 24) (Miss.2011) (quoting Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005)). “The evidence will be deemed sufficient if, bearing in mind the reasonable-doubt standard, ‘reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.’ ” Id. All credible evidence consistent with guilt will be accepted as true. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 10. Regarding a challenge to the weight of the evidence, the reviewing court will not disturb the verdict unless allowing “it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). The evidence will be viewed in the light most favorable to the verdict. Id. It is the jury’s role to assess the weight and credibility of the evidence and to resolve any conflicts in the evidence. Latiker v. State, 918 So.2d 68, 73 (¶ 12) (Miss.2005).
¶ 11. Day argues that he did not have the requisite mental state at the time of the shooting to constitute “premeditated murder.” He claims the previous attempts and prior threats by Cortney to injure Day provide lawful justification, or a legal excuse, which should mitigate his offense from murder to manslaughter. Day further contends the murder element of “malice aforethought” was unmet — because he did not know Cortney was attending the social gathering, he could not have “plotted” to kill Cortney, nor was there any other evidence he planned to kill Cort-ney.
¶ 12. The definition of murder is “[t]he killing of a human being without authority of law by any means or in any manner ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being....” Miss.Code Ann. § 97-3-19(l)(a) (Supp.2013). A jury instruction was given that Day “unlawfully, willfully, feloniously, and without authority of law, and of his malice aforethought,”[2] killed Cortney by shooting him. Over the objection of the State, a jury instruction was also given for the lesser crime of *1015 manslaughter,[3] as well as a jury instruction defining “heat of passion.”[4]
¶ 13. The eyewitnesses to the murder maintain that Day walked up behind the victim, unprovoked, and shot him in the back. The evidence fulfills the required element of “malice aforethought” or “deliberate design.” Cortney was unarmed; there was no case for self-defense. Cortez testified that his brother’s demeanor was “the same” when he shot Cortney; he was not in a heightened emotional state. The only evidence of interaction between Day and Cortney the day of the murder came from Zera’s testimony: she stated that they stood beside one another, and Cort-ney may have said something to Day. Regarding the previous alleged acts of violence by Cortney against Day, a two-month “cooling off period” cannot be considered an “immediate” act of provocation for manslaughter. The jury considered the lesser crime of manslaughter, and rejected it.
¶ 14. Day bases his argument on Day v. State, 589 So.2d 637 (Miss.1991), where the Mississippi Supreme Court reversed a defendant’s conviction for murder because the victim’s prior threats against the defendant should have been admitted into evidence to show the defendant’s state of mind at the time of the killing, which is an essential factor in determining whether a homicide is murder or manslaughter. Id. at 644. However, Day is distinguishable, as that case was reversed due to the improper exclusion of evidence. Id. Here, there was no improper exclusion of any evidence, including prior threats or Day’s state of mind. In fact, Day’s case-in-chief mainly consisted of testimony regarding Cortney’s alleged prior acts, and Day’s alleged state of mind because of them.
¶ 15. We cannot say, taking the evidence presented in the light most favorable to the State, that the jury erred in finding Day guilty of murder. We also find that in analyzing the evidence in the light most favorable to the verdict, allowing the verdict to stand does not sanction an unconscionable injustice. The weight of the evidence supporting the verdict was substantial.
¶ 16. THE JUDGMENT OF THE HOLMES COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HOLMES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. The defense tried to show that the reason Cortney previously shot Day was because Cortney's cousin was killed by Day’s relative on the day of the first shooting.

. The Mississippi Supreme Court has held that "malice aforethought" and "deliberate design” have the same meaning. Hawthorne v. State, 835 So.2d 14, 19 (¶ 21) (Miss.2003) (citing Tran v. State, 681 So.2d 514, 516 (Miss.1996)).

. "Manslaughter" is defined as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense. ..." Miss.Code Ann. § 97-3-35 (Rev. 2006).

. The Mississippi Supreme Court has defined "heat of passion” as:
[A] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
Tait v. State, 669 So.2d 85, 89 (Miss.1996) (quoting Buchanan v. State, 567 So.2d 194, 197 (Miss.1990)). A jury instruction was given in this case that stated the same.