# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-00113-COA

JUSTIN DOMINIQUE HOLMES A/K/A JUSTIN DOMONIQUE HOLMES A/K/A JUSTIN HOLMES A/K/A JUSTIN D. HOLMES

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/08/2012 |
| TRIAL JUDGE: | HON. JOHN C. GARGIULO |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHRISTOPHER BRIAN FISHER |
| | MICHAEL W. CROSBY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, MANSLAUGHTER, AND COUNT II, ATTEMPTED AGGRAVATED ASSAULT, AND SENTENCED TO TWENTY YEARS FOR EACH COUNT, WITH THE SENTENCES TO RUN CONCURRENTLY, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 12/15/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES, MAXWELL AND WILSON, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.  Justin Dominique Holmes was convicted of heat-of-passion manslaughter and attempted aggravated assault.  The charges stemmed from him shooting one person to death

and attempting to shoot another. On appeal, he challenges the sufficiency and weight of the evidence. He also argues that the indictment was improperly amended from aggravated assault to attempted aggravated assault and that his trial counsel was ineffective. After review, we find no error and affirm.

**Facts and Procedural History**

¶2. On January 29, 2011, half-brothers Larenzo Pettis and Kyle Oatis drove to Lenard Dennis's home around 12:30 p.m. Larenzo had purchased drugs from Lenard in the past, and was in search of cocaine that day. Lenard was barbequing in his front yard when the two men arrived looking for drugs. But when asked for dope, Lenard told Larenzo to "get the hell away" from his house. Lenard and Larenzo then began cussing each other, prompting Lenard's family to come outside. Among those present were Stacy Dennis (Lenard's nineteen-year-old son), Josh Harvey (Lenard's seventeen-year-old son), Danielle Harvey (Lenard's daughter), Kiwana Sanders (Lenard's significant other and Stacy's mom), and Tammy Woods (Lenard's neighbor).

¶3. After hearing Larenzo insult Lenard, Stacy punched Larenzo in the mouth.[1] This jab dazed Larenzo momentarily. But Larenzo made it back to the car, and Kyle started to drive off. As the two began to leave, they taunted Lenard's family to come down the street to fight. And Lenard's family obliged, taking off on foot in pursuit of Kyle's car.

---

[1] Larenzo, Lenard, Josh, and Stacy all testified that Stacy punched Larenzo one time. Josh testified that Holmes did not have anything to do with this initial fight. Josh also said he did not even see Holmes present when Stacy punched Larenzo.

¶4.    Then Holmes—who was Lenard's neighbor and close family friend—somehow entered the picture.  According to several witnesses, Holmes fired two shots at Kyle's moving vehicle.  Unwisely, Kyle called Holmes a profane name and started teasing him for shooting what he thought were blanks.  This apparently further upset Holmes, so he opened fire again on Kyle's car.  This time, bullets hit Kyle in the chest, lower back, and arm, causing him to crash his car into a bridge.  Kyle died while en route by ambulance to a hospital.

¶5.    Dr. Paul McGarry, a forensic pathologist, testified that Kyle died of internal bleeding from the gunshot wounds.  Three .25-caliber projectiles were found in Kyle's body and five .25-caliber automatic shell casings were recovered from the scene.  There was no dispute from the various witnesses that Holmes was the shooter and that Holmes was the only person with a gun.

¶6.    On July 25, 2011, Holmes was indicted for murder and aggravated assault.  On October 29, 2012, the State filed a motion to amend the indictment, asking the court to modify Count II from aggravated assault to attempted aggravated assault.[2]  Trial began on November 6, 2012.  After its case-in-chief, the State made an ore tenus motion to amend the indictment, based on the same ground as its pretrial motion.  The circuit court amended the

---

[2] The State's motion requested that Holmes be charged with "unlawfully, feloniously, willfully, and purposefully attempt[ing] to cause or caus[ing] bodily injury to Larenzo Pettis, with a deadly weapon, to-wit: a handgun, by attempting to shoot or shooting the said Larenzo Pettis with said weapon."

3

indictment. After deliberating, the jury found Holmes guilty of the lesser crime of manslaughter and attempted aggravated assault. The judge sentenced Holmes to twenty years for manslaughter and twenty years for aggravated assault, to run concurrently. Holmes appealed.

## Discussion

### I. Sufficiency of the Evidence

#### A. Standard

¶7. Holmes raises a variety of challenges to the sufficiency of the evidence. We address each in turn.

¶8. When assessing the legal sufficiency of the evidence, we consider all evidence in the light most favorable to the State. *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). Credible evidence consistent with guilt must be accepted as true. *Day v. State*, 126 So. 3d 1011, 1014 (¶9) (Miss. Ct. App. 2013). We give the State the benefit of all favorable inferences reasonably drawn from the evidence. *Jones v. State*, 20 So. 3d 57, 64 (¶16) (Miss. Ct. App. 2009) (citing *Hughes v. State,* 983 So. 2d 270, 275-76 (¶¶10-11) (Miss. 2008)). And the jury resolves matters of weight and credibility. *Day*, 126 So. 3d at 1014 (¶10). Reversal is only proper if reasonable and fair-minded jurors could only find the accused not guilty. *Jones*, 20 So. 3d at 64 (¶16).

#### B. Heat-of-Passion Manslaughter

¶9. Holmes was charged with murder, but the jury found him guilty of the lesser crime

4

of manslaughter. As he sees it, there was no evidence he "had any reason to be in the heat of passion of anything." So he feels the evidence was insufficient to support a manslaughter conviction. But missed in his argument is the fact that it was Holmes who spoke up and requested—and was granted—a manslaughter instruction.

¶10. On appeal, he now tries to distance himself from that evidentiary request, as well as the initial skirmish between Lenard and Larenzo and the ensuing chase that ended in Kyle's death. But at trial his tune was quite different. There, Holmes's attorney argued, "Judge, you heard testimony . . . that a fight took place, and as a result of the fight, we feel like we're entitled to a lesser[-]included charge of manslaughter." The State had no objection to Holmes's requested instruction, and the judge granted it.[3]

_____

[3] The manslaughter jury instruction stated:

> If you find from the evidence beyond a reasonable doubt that: (1) on or about January 29, 2011, in the First Judicial District of Harrison County, Mississippi, (2) the [d]efendant, Justin Domonique Holmes, did willfully, unlawfully and feloniously kill and slay Kyle Oatis, a human being, (3) without malice, in the heat of passion by the use of a dangerous weapon, (4) without authority of law and not in necessary self-defense, then you shall find [Holmes] guilty of manslaughter.

Another instruction stated:

> [T]he term heat of passion is defined as a state of violent and uncontrollable rage caused by certain provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment[,] or terror.

¶11. After review, we find Holmes got just what he asked for and cannot now complain of it. Indeed, our supreme court has been crystal clear that "an accused may not complain of an instruction given at his request." *Caston v. State*, 823 So. 2d 473, 508 (¶121) (Miss. 2002) (quoting *Buford v. State*, 372 So. 2d 254, 256 (Miss. 1979)). For this reason, we too find Holmes cannot complain about the manslaughter instruction—an instruction he specifically asked for.

¶12. This bar aside, we do briefly note there was testimony that Lenard's family was angrily chasing Kyle's vehicle, when Holmes apparently joined the chaos and fired two shots at Kyle's car. Kyle then hurled a vulgarity at Holmes, teasing him for shooting what he thought were blanks. At that point Holmes fired away again, this time shooting Kyle to death.[4] We recognize "words alone . . . are not enough to invoke the passion required for" manslaughter. *Abeyta v. State*, 137 So. 3d 305, 311 (¶10) (Miss. 2014) (quoting *Phillips v. State*, 794 So. 2d 1034, 1037 (¶10) (Miss. 2001)). But viewed in the light most favorable to the State, the angry scene and chase, perhaps in combination with Kyle's insult and heckling, may have justified the jury in believing Holmes, without malice and fueled by passion,

---

[4] Holmes was charged with deliberate-design murder. And the testimony showed Holmes shot Kyle to death. Manslaughter is a lesser-included offense of murder. *Schankin v. State*, 910 So. 2d 1113, 1118 (¶12) (Miss. Ct. App. 2005) (citing *State v. Shaw*, 880 So. 2d 296 (Miss. 2004)). Even if the killing was not committed in the heat of passion, if there is "legally sufficient evidence to support a conviction of murder, the defendant will not be heard to complain that a manslaughter instruction was given, even if the instruction was not warranted under the evidence." *Id*. at (¶13) (citing *Jackson v. State*, 551 So. 2d 132, 146 (Miss. 1989)).

6

opened fire on Kyle.

¶13. But we need not speculate much, since "[i]ssues regarding whether a crime occurred in the heat of passion are resolved by the jury." *Davis v. State*, 130 So. 3d 1141, 1151 (¶39) (Miss. Ct. App. 2013). This is particularly true where Holmes asked for the specific manslaughter instruction he now challenges.

### C. Attempted Aggravated Assault

¶14. Holmes also claims there was insufficient evidence to show he attempted to shoot at Larenzo. So in his eyes, the State also failed to prove attempted aggravated assault. Again, we disagree.

¶15. "A person is guilty of aggravated assault if he . . . attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]" Miss. Code Ann. § 97-3-7(2)(a)(ii) (Supp. 2015).

¶16. Kyle drove the vehicle, and Larenzo was the passenger. Several witnesses testified that Holmes shot at the car and no one else had a gun. When asked if he was "shot at too that day[,]" Larenzo made clear—"[b]ullets was coming that way, so evidently I was[.]" And Detective Chris Baker testified the passenger door had an "impact mark . . . where something struck the vehicle on the inside of the door panel . . . ." He believed this was consistent with a gunshot. Therefore, we find the evidence more than sufficient for Holmes's attempted-aggravated-assault conviction.

### D. Credibility of Witnesses

7

¶17.     Holmes also remarks about witness credibility.  He suggests the State's "witnesses were severely impeached" and "all lied to the investigator to protect their son/brother."  But credibility calls are for the jury, not appellate courts.  *Pearson v. State*, 64 So. 3d 569, 574 (¶14) (Miss. Ct. App. 2011).  And ultimately, after sizing up the evidence, the jury believed Lenard's family members.

## II.     Weight of the Evidence

¶18.     Holmes also vaguely argues his assault conviction was against the weight of the evidence.  We will disturb a verdict only in those rare cases where "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."  *Bush*, 895 So. 2d at 844 (¶18).  When a weight-of-the-evidence argument is made, we weigh the evidence "in the light most favorable to the verdict."  *Id*.  With this standard in mind and for the reasons already cited in Section I, we too find Holmes's assault conviction was supported by the weight of the evidence.

## III.     Amending the Indictment

¶19.     Holmes also argues the circuit judge "chang[ed] the material elements" of the indictment by substantively amending it from aggravated assault[5] to attempted aggravated

---

[5] The initial aggravated-assault indictment dated July 25, 2011, charged that Holmes "did unlawfully, wilfully[,] and purposely cause bodily injury to Larenzo Pettis, with a deadly weapon, to-wit: a handgun, by shooting the said Larenzo Pettis with said weapon, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi" under Mississippi Code Annotated section 97-3-7(2).

8

assault.[6]

¶20.    Considering his amendment-based argument, we point out that an indictment may only be amended at trial if the amendment is immaterial to the case's merits and the defense will not be prejudiced by the amendment. *Griffin v. State*, 584 So. 2d 1274, 1276 (Miss. 1991). But substantive amendments to the charge must be made by the grand jury. *Eakes v. State*, 665 So. 2d 852, 860 (Miss. 1995). The attempt addition is what he challenges here. And in one sense, he is right that an attempt to commit a crime is, generally, an indictable offense, separate and distinct from the crime itself. *Mason v. State*, 430 So. 2d 857, 858 (Miss. 1983). But there is a distinction when the charged statute itself criminalizes an attempt.

¶21.    Holmes was charged with aggravated assault. *See* Miss. Code Ann. § 97-3-7. According to this statute, "[a] person is guilty of aggravated assault if he . . . ***attempts to cause* or *purposely* or *knowingly causes*** bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]" Miss. Code Ann. § 97-3-7(2)(a)(ii) (emphasis added). And our supreme court has held that when a statute like this one is charged—a statute that permits "a jury to convict of the crime charged in the indictment *or of an attempt to commit the offense charged*"—a defendant is deemed on notice that he could be convicted of the attempt. *Eakes,* 665 So. 2d at 860 (emphasis added).

---

[6] On November 7, 2012, the circuit judge entered an order amending the indictment to attempted aggravated assault to read that Holmes "did unlawfully, feloniously, willfully, and purposefully attempt to cause bodily injury to Larenzo Pettis, with a deadly weapon, to-wit: a handgun, by attempting to shoot the said Larenzo Pettis with said weapon[.]"

9

So by virtue of this statute, Holmes was "clearly and fully inform[ed] . . . that causing or *attempting* to cause bodily injury to another, either with a deadly weapon or by some other means likely to produce death or serious injury, will constitute the crime of aggravated assault." *Brooks*, 18 So. 3d 833, 839 (¶24) (Miss. 2009); *cf. also Lewis v. State*, 897 So. 2d 994, 996 (¶9) (Miss. Ct. App. 2004) (quoting *Brown v. State*, 852 So. 2d 607, 610 (¶9) (Miss. Ct. App. 2003)) (noting that in simple-assault cases, "whether the indictment read 'assault' or 'attempted assault' makes no difference—it is the same crime," and "attempted assault falls within the meaning of assault").

¶22.    We thus find any defense Holmes may have had was equally available to him after this immaterial amendment was made. *Spann v. State*, 771 So. 2d 883, 898 (¶44) (Miss. 2000).

### IV.    Ineffective Assistance of Counsel

¶23.    Holmes next claims his counsel was ineffective. To prove this, Holmes must show: (1) his attorney's performance was deficient, and (2) the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To qualify as deficient, the attorney's performance must fail to meet "an objective standard of reasonableness." *Id.* at 688. To establish the required showing of deficiency and prejudice, Holmes must overcome the "strong presumption" that his counsel's conduct "falls within the wide range of reasonable professional assistance[.]" *Id.* at 689.

¶24.    Holmes insists his lawyer was ineffective because he "produced the only evidence to indicate that the shooter fought the victim before the shooting[.]" Therefore, he offered "the

10

only evidence that a jury could have relied upon to render a guilty verdict for heat-of-passion manslaughter." But Holmes fails to identify what evidence or witness his counsel produced that prejudiced him.[7]

¶25. Without more, we are simply left speculating and cannot say Holmes has overcome the strong presumption that his lawyer's conduct was within the "wide range of reasonable professional assistance[.]" *Love v. State*, 121 So. 3d 952, 956 (¶21) (Miss. Ct. App. 2013). With such a scant argument, and obviously no response from Holmes's trial lawyer, we are reluctant to "second-guess" his lawyer's chosen strategy. *Shorter v. State*, 946 So. 2d 815, 819 (¶15) (Miss. Ct. App. 2007). Because trial-strategy-based challenges are typically more developed when brought in postconviction-relief proceedings, we dismiss this claim without prejudice.

¶26. **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, MANSLAUGHTER, AND COUNT II, ATTEMPTED AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS FOR EACH COUNT, TO RUN CONCURRENTLY, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR.**

---

[7] It appears Holmes is referring to Kiwanda Sanders's testimony, who is Stacy's mother and Lenard's significant other. She testified that Holmes "got in a fight[,] I'm guessing." She later confirmed that she was just "guessing" that Holmes got into a fight before the shooting.